UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGECOMMISSION,<br><br>                      **Plaintiff,**<br><br>v.<br><br>LUPO SECURITIES LLC, FKA ALPHAGEN SECURITIES LLC,<br><br>                      **Defendant.** | Case Number: 1:21-cv-04027<br><br>Judge:<br><br>Magistrate Judge: |

## COMPLAINT

Plaintiff U.S. Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint against Defendant Lupo Securities, LLC ("Lupo" or "Defendant"), formerly known as Alphagen Securities, LLC, alleges as follows:

### SUMMARY

1. This matter involves a violation by Defendant Lupo Securities LLC ("Lupo" or "Defendant") of Rule 14e-4, commonly referred to as the "short tender rule," promulgated under the Securities Exchange Act of 1934 ("the Exchange Act"). Under Rule 14e-4, a person participating in a tender offer for less than all of the company's outstanding shares of stock may not tender more shares than its net ownership of the stock, after taking into account its short positions in the stock. Because such partial tender offers are for fewer than all of the outstanding shares of a security, a person tendering more shares than its net ownership (or net long position), decreases the number of shares accepted from other participating shareholders. Accordingly, violators of Rule 14e-4 enrich themselves at the expense of other participants in a partial tender offer.

2. In July 2016, Lockheed Martin Corporation ("Lockheed") commenced a partial tender offer for shares of its common stock.

3. The day before the expiration of the partial tender offer, Lupo tendered on its own behalf 1,000,000 Lockheed shares, which was in excess of its net long position in Lockheed by 925,000 shares.

4. When so doing, Lupo violated Rule 14e-4, and illicitly profited at the expense of others who tendered shares in the Lockheed partial tender offer.

## VIOLATION

5. By virtue of the foregoing conduct and as alleged further herein, Lupo has violated Rule 14e-4.

6. Unless Lupo is restrained and enjoined, it will continue to engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

8. The Commission seeks a final judgment: (a) permanently enjoining Lupo from violating the federal securities rule this Complaint alleges it has violated; (b) ordering Lupo to disgorge all ill-gotten gains received as a result of the violation alleged herein and to pay prejudgment interest thereon; (c) ordering Lupo to pay a civil money penalty pursuant to Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a), respectively].

10. Defendant, directly and indirectly, has made use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise in connection with the transactions, acts, practices, and courses of business alleged herein.

11. Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. During the time period relevant to the allegations in this Complaint, Lupo's offices were located in this District, Lupo transacted business in this District, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.

## DEFENDANT

12. **Lupo Securities LLC** is an Illinois limited liability company organized on June 19, 1997, with offices in Chicago, Illinois. Lupo is a wholly-owned subsidiary of Lupo Holding Company, LLC, which was formed in Delaware. Lupo was a broker-dealer registered with the SEC, during which time it engaged in trading in its own account, and used ABN Amro Clearing Chicago LLC ("ABN Amro") as its clearing firm. On January 30, 2021, Lupo terminated its SEC registration.

## OTHER RELEVANT ENTITY AND PERSONS

13. **Lockheed Martin Corporation** is a public company registered with the SEC, whose common stock is traded on the New York Stock Exchange under the trading symbol "LMT." The company's headquarters is located in Bethesda, Maryland.

14. **Lupo CCO** was Lupo's chief compliance officer and assistant risk manager in July and August 2016. Lupo CCO also held FINRA issued securities licenses: Series 3, 4, 7, 24, 53, 55, and 63.

15. **Lupo Trader** was, during July and August 2016, a co-manager of, and held a two-thirds ownership interest in, Lupo Holding Company LLC. He was also an owner of, and Class A trader for, Defendant Lupo Securities LLC.

## BACKGROUND

16. For purposes of this Complaint, a "partial tender offer" means an offer by a public company to its shareholders to exchange less than all of the company's outstanding shares of stock for other stock and for which shares tendered by shareholders are accepted on a *pro rata* basis for a specified period of time. This period of time is referred to as the "proration period." In this case, the proration period commenced on July 11, 2016, and ended at 8:00 a.m. (Eastern Daylight Saving Time) on August 16, 2016.

17. When a public company offers to accept less than its total number of outstanding shares of its stock, and a greater number of the company's shares are tendered than the company offered to accept, then the company is required to accept shares on a *pro rata* basis according to the number of shares each person tenders. The percentage of tendered shares accepted by the public company relative to the total shares subject to *pro rata* acceptance is known as the "proration ratio" or "proration factor." By their nature, partial tender offers involve risk to shareholders of a public company that not all of the shares a shareholder tenders will be accepted. This risk is referred to as "proration risk."

18. A "short tender" is an investing practice that involves an investor tendering more stock than the investor owns in order to avoid or reduce the investor's proration risk

19. "Call options" provide the holder the right (but not the obligation) to purchase a specific amount of stock (generally 100 shares) at a specified price (the "strike price" or "exercise price"), for a certain period of time. Investors buy call options when they think the share price of the underlying stock will rise; they sell (or write) calls if they think the share price will fall.

20. The term "standardized call option" means any call option that is traded on an exchange, or for which quotation information is disseminated in an electronic interdealer quotation system of a registered national securities association.

21. A "hedged tender" is an investing practice in which an investor tenders shares owned by the investor as part of a partial tender offer but then sells some or all of those tendered shares after that investor's initial tender but before the expiration of a partial tender offer. The investor can accomplish the same result by writing call options instead of selling shares. A hedged tender has the same purpose and effect as a short tender.

22. "Short tenders" and "hedged tenders" have the effect of diluting the *pro rata* acceptance of other investors because the pool of shares tendered is artificially increased, as to short tendering because shares which do not actually exist are tendered, and in the case of hedged tendering because of the possibility that the same shares would be effectively tendered by two or more shareholders.

23. "Put options" provide the holder the right (but not the obligation) to sell a specific amount of stock (generally 100 shares) at a specified strike price. The seller (or writer) of the put option is obligated to buy the stock from the holder at the strike price. Investors buy puts if they think the share price of the underlying stock will fall; they sell (or write) puts if they think the share price will rise.

24. If the exercise price of a call option is less than the market price of the stock, the call option is said to be "in-the-money."

25. The "volume weighted average price" (or "VWAP") is a widely used industry trading benchmark that gives the average price a stock has traded throughout the day, based on both the size and price of that day's trades.

**RULE 14e-4**

26. Rule 14e-4 is generally designed to prohibit persons from tendering more shares of stock than they own. Under the Rule, a person may tender shares into a partial tender offer only if, both at the time of tender and at the end of the proration period, the person has a "net long position" in either the shares or an equivalent security equal to or greater than the amount tendered into the partial tender offer.

27. A "short position" includes the amount of stock that a person has sold, or has entered into an unconditional contract, binding on both parties thereto, to sell; or has borrowed; or has written a non-standardized call option, or granted any other right pursuant to which his shares may be tendered by another person; or <u>is obligated to deliver upon exercise of a standardized call option</u> sold on or after the date that a tender offer is first publicly announced or otherwise made known by the bidder to holders of the security to be acquired, <u>if the exercise price of such option is lower than the highest tender offer price or stated amount of the consideration offered for the subject security</u>. For example, to attain a short position, an investor who anticipates a decline in the price of a security may instruct her broker to sell short 100 shares of that security while the security trades at $50.00 per share. The broker then lends the shares to the investor, and the investor sells those shares into the open market. The investor now has a short position of 100 shares. She does not own the securities, and must, at a designated

time, return those 100 shares to the broker. If the price of the security declines by $10.00, she will purchase the shares for $4,000.00, return the shares to the broker, and claim a $1,000.00 profit.

28. A "long position" is the amount of stock a person or his agent has title to or would have title to but for having lent such securities; or has purchased, or has entered into an unconditional contract, binding on both parties thereto, to purchase but has not yet received; or has exercised a standardized call option for; or has converted, exchanged, or exercised an equivalent security for; or is entitled to receive upon conversion, exchange, or exercise of an equivalent security. In other words, a "long position" means the amount of securities an investor owns. For example, if an investor purchases 100 shares of stock, the investor has a long position of 100 shares.

29. A person's "net long position" in shares of stock equals the excess, if any, of such person's "long position" over a person's "short position." For example, if an investor buys 100 shares of stock, and takes a short position in 50 shares of the same stock, then that investor's net long position in the stock is 50 shares. For partial tender offer purposes, the calculation of the net long position must be done both at the time of tender and at the end of the proration period.

30. In a partial tender offer, such as the Lockheed partial tender offer described below, the consideration offered is often shares of common stock.

31. In the context of a partial tender offer, determining whether a call option is a short position requires calculating the value of the consideration offered as a dollar amount.

**FACTS**

32. On January 26, 2016, Lockheed announced the spin-off of its information-systems-and-global-solutions business to Leidos Holdings, Inc. ("Leidos").

33. On July 11, 2016, Lockheed announced commencement of a partial tender offer as part of this spin-off. The partial tender offer would provide Lockheed stockholders with the opportunity to exchange their shares of Lockheed common stock for shares of Abacus Innovations Corporation ("Abacus")—and Abacus shares would then be converted into an equal number of shares of Leidos common stock. Prior to this exchange, Leidos would declare a $13.64 special dividend, which would not be received by tendering Lockheed stockholders.

34. Lockheed's announcement also detailed that it would determine the ratio at which shares of Lockheed common stock would be exchanged for Abacus common stock—which, as stated above, would be converted into an equal number of shares of Leidos common stock—based on the average of the daily VWAPs (*i.e.*, volume-weighted average price) of shares of Lockheed common stock and Leidos common stock on the New York Stock Exchange on each of three valuation dates ending on the third trading day prior to the expiration of the partial tender offer, subject to an exchange ratio upper limit. Lockheed's partial tender offer expired at 8 a.m. (Eastern Daylight Saving Time) on August 16, 2016.

35. Between July 12 and August 15, 2016, Lupo, through its agent Lupo Trader, purchased 1,000,000 shares of Lockheed common stock, thereby acquiring a long position in Lockheed shares. During this same period, Lupo, again through Lupo Trader, purchased and/or sold Leidos common stock and various Lockheed and Leidos options.

36. On the morning of Friday, August 12, 2016, Lockheed announced that its stockholders who tendered Lockheed stock into the partial tender offer would receive 8.2136 Leidos shares for each accepted share of Lockheed, and that a maximum of 9,369,694 shares would be accepted—*i.e.*, approximately 3% of Lockheed's outstanding common stock.

37. By Monday, August 15, 2016—the last trading day before the expiration of the

Lockheed's partial tender offer—any party participating in the offer had available sufficient information to calculate their net long position as reflected in this Table:

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|
| 8/15/16 Lockheed VWAP | 8/15/16 Leidos VWAP | Leidos Special Dividend | Net Leidos VWAP [(2)-(3)] | Published Exchange Ratio | Value of Consideration Offered [(4) x (5)] | Premium per Share Accepted [(6) - (1)] |
| $265.77 | $50.51 | $13.64 | $36.87 | 8.2136 | $302.84 | $37.07 |

38.     Based on the VWAP of Lockheed and Leidos on August 15, 2016, the value of the consideration offered for each Lockheed share accepted in the partial tender offer was $302.84.  Accordingly, compared to the market price of Lockheed stock, there was a significant premium of $37.07 per accepted Lockheed share, and standardized call options written on or after July 11 with a strike price below $302.84 constituted short positions under Rule 14e-4.

39.     At the close of trading on August 15, 2016, Lupo held positions in Lockheed and Leidos securities, including long 1,000,000 shares of Lockheed stock, short 7,425 Lockheed standardized call options (each representing 100 shares) at a $275 strike price, and short 1,825 Lockheed standardized call options (each representing 100 shares) at a $300 strike price.  Lupo wrote all of these call options on or after July 11, 2016.

40.     Pursuant to Lupo's "Written Supervisory Procedures Manual" ("Procedures"), prior to participating in a partial tender offer, a Lupo trader must obtain confirmation from Lupo's chief compliance officer or an operation staff person that Lupo's net long position is equal to or exceeds the proposed quantity to be tendered.

41.     On August 15, 2016, Lupo's CCO reviewed Lupo's partial tender offer instructions to Lupo's clearing firm, ABN Amro, to determine whether Lupo's tender would comply with Rule 14e-4.  His review did not comport with Rule 14e-4.  Instead of determining

the value of the consideration *offered*—as outlined above—he estimated the value that Lupo would *receive* by, first, randomly picking a number less than ten percent as his estimate of the proration ratio, then using that estimate to approximate the combined value of both the shares that would be accepted by Lockheed and those that would not accepted. Lupo CCO estimated that Lupo would receive approximately $300 in value from the less than ten percent of Lockheed shares tendered by Lupo that he estimated would be accepted by Lockheed and much less than $300 in value from the greater than 90 percent of the shares he estimated would not be accepted by Lockheed. Lupo CCO's back-of-the-envelope estimate of the combined value of the 1,000,000 shares tendered by Lupo purportedly resulted in an amount less than $275 per share, and on that basis he decided that the call options held by Lupo were not short positions under Rule 14e-4, and, therefore, did not need to be subtracted from Lupo's long position as required by Rule 14e-4.

42. Lupo CCO did not discuss his calculations with Lupo Trader; he did not memorialize his calculations in any way; and on August 15, 2016, he consulted neither Lupo's Procedures on Rule 14e-4 nor the text of the rule itself prior to performing his calculations.

43. Lupo Trader did not receive any training or instruction on how to comply with Rule 14e-4.

44. At no time did Lupo provide Lupo CCO with a compliance-officer manual while he was Lupo's chief compliance officer; Lupo did not provide him with any training or courses related to securities laws, rules or regulations, and Lupo did not provide him with any compliance training.

45. On August 15, 2016, Lupo instructed its clearing firm, ABN Amro, to tender its 1,000,000 shares of Lockheed as part of the partial tender offer.

46. Throughout the trading days from August 10-15, the value of the 8.2136 Leidos shares offered in exchange for an accepted share of Lockheed exceeded $275, and on August 15, it exceeded $300. Lupo, however, never reduced its short position in the call options during this period.

47. On August 15, 2016, Lupo was long 1,000,000 Lockheed shares while still being short 7,425 Lockheed standardized call options (representing 100 shares of Lockheed common stock per option) with a strike price of $275 and 1,825 Lockheed standardized call options (representing 100 shares of Lockheed common stock per option) with a strike price of $300. In spite of this, Lupo tendered all 1,000,000 Lockheed shares on the afternoon of August 15, without reducing the amount to account for its short position in the call options. Accordingly, Lupo tendered 925,000 shares in excess of its net long position as reflected in the table below:

| (1) Tendered Lockheed Shares | (2) Long Position | (3) Short Calls with a $300 or $275 Strike | (4) Short Position (3) x 100 | (5) Net Long Position (2) - (4) | (6) Excess Shares Tendered (1) - (5) |
|---|---|---|---|---|---|
| 1,000,000 | 1,000,000 | 9,250 | 925,000 | 75,000 | 925,000 |

48. Lockheed's partial tender offer expired at 8 a.m. (Eastern Daylight Saving Time) on August 16, 2016. A total of 95,518,064 shares of Lockheed common stock was tendered as part of Lockheed's partial tender offer—86,148,370 more shares than Lockheed had agreed to accept—which resulted in a proration ratio of approximately 8.05 percent.

49. On August 16, 2016, in anticipation of receiving Leidos shares from its participation in the partial tender offer, Lupo sold short 42,500 Leidos shares. It also exercised 6,150 Leidos put options on August 19.

50. On August 23, 2016, Lockheed accepted 80,520 of Lupo's tendered shares, and

- 11 -

Lupo received 661,359 Leidos shares as a result, at a premium of $37.07 per share accepted based on the prices of Lockheed and Leidos on August 15, 2016.

51. Lupo sold 3,850 Leidos shares on August 23, 2016 and 9 Leidos shares on August 24, 2016.

52. Had Lupo tendered only its net long position, 6,040 of its tendered shares would have been accepted, and it would have received 49,607 Leidos shares.

53. As a result of its unlawful tender, Lupo received 611,752 more Leidos shares than it should have, resulting in ill-gotten gains of more than $1 million.

54. The Commission has not exempted, pursuant to Rule 14e-4(c), Lupo's tender as described herein.

## CLAIM FOR RELIEF

**(Lupo Securities LLC Violated Exchange Act Rule 14e-4)**

55. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 54, above.

56. Lupo, acting alone and in concert with others, directly and indirectly, tendered for its own account Lockheed common stock in a partial tender offer.

57. At the time of its tender and the end of the partial tender offer proration period, Lupo had a net long position less than the amount of Lockheed common stock that it tendered.

58. By reason of the foregoing, Lupo, directly or indirectly, alone or in concert, is strictly liable for its violation of, and, unless enjoined, will again violate Rule 14e-4 under the Exchange Act [17 C.F.R. § 240.14e-4].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Lupo and its agents, servants, employees, and attorneys and all persons in active concert or participation with him from violating, directly or indirectly, Exchange Act Rule 14e-4 [17 C.F.R. § 240.14e-4];

**II.**

Ordering Lupo to disgorge all ill-gotten gains it received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violation;

**III.**

Ordering Lupo to pay civil monetary penalties under Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and

**IV.**

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rules 38(b) and 39(a) of the Federal Rules of Civil Procedure, the SEC demands trial by jury on all issues so triable.

Date: July 29, 2021

Respectfully submitted,

**United States Securities and Exchange Commission**

*/s/ Stephan J. Schlegelmilch*
Stephan J. Schlegelmilch
Supervisory Trial Counsel
U.S. Securities And Exchange Commission
Division of Enforcement – Trial Unit
100 F Street, N.E.
Washington, DC 20549
(202) 551-4935
SchlegelmilchS@sec.gov

*/s/ John E. Birkenheier*
John E. Birkenheier (Illinois Bar No. 6270993)
Designated Local Counsel for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 1450
Chicago, IL 60604
Telephone: (312) 886-3947
Fax: (312) 886-8514
Email: birkenheierj@sec.gov

*Attorneys for Plaintiff*
*U.S. Securities and Exchange Commission*